

CHARLES CARREON (127139)
CHARLES CARREON, ESQ.
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel: 520-841-0835
Attorney for Plaintiff Gary Arden

E-filing

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

GARY ARDEN,

Plaintiff,

vs.

FRANK KASTELL, LINARD DAVIS, AIRPORT TRAVEL AGENCY, INC., ALLA SERDYUCHENKO, RON BRIGHAM, SMARTE CARTE, INC., and Does 1 - 10

Defendants.

Case No.: CV 10 0436

COMPLAINT FOR CONSPIRACY TO VIOLATE, AND FOR VIOLATION OF CIVIL RIGHTS, MALICIOUS PROSECUTION, DEFAMATION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

JURY TRIAL DEMANDED

JL

**THE PARTIES**

1. Plaintiff Gary Arden ("Plaintiff") is a citizen of the United States, a resident of San Francisco, California.
2. Defendant Frank Kastell ("Kastell") is a detective in the San Mateo County Sheriff's Office who at all times was acting under color of law.
3. Defendant Airport Travel Agency, Inc. ("Airport Travel") is a California corporation.
4. Defendant Linard Davis ("Davis") is the owner and managing agent of Airport Travel Agency, Inc., located at San Francisco International Airport, for whose wrongful actions Airport Travel is liable.
5. Defendant Smarte Carte, Inc. ("Smarte Carte") is a Minnesota corporation with a California base of operations at 2 Terminal, San Francisco, California 94128.

6. Defendants Ron Brigham ("Brigham") and Alla Serdyuchenko ("Serdyuchenko") are, and all times alleged herein were, managing agents and employees of Smarte Carte, Inc., for whose wrongful actions Smarte Carte is liable. Larry Needham ("Needham") is also a managing agent of Smarte Carte.

7. Does 1 – 10 are additional persons responsible in some way for the harms suffered by plaintiff as alleged herein, and will be named by their true names upon discovery thereof.

**SUBJECT MATTER JURISDICTION**

8. This is an action under 42 U.S.C §§ 1983; wherefore, this Court has jurisdiction under 28 U.S.C. § 1338.

**VENUE**

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2).

**INTRADISTRICT ASSIGNMENT**

This case is assignable to the San Francisco District, pursuant to Civil L.R. 3-2(c).

**FACTS RELEVANT TO ALL CLAIMS FOR RELIEF**

10. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

11. Plaintiff has a substantial background in the security industry and a perfectly clean criminal record. Plaintiff was employed by Smarte Carte as an Assistant Terminal Manager at San Francisco International Airport ("SFO") starting in June 2008, and was so employed during the first week of February 2009. Plaintiff was on track to receive a promotion and had been interviewed by Brigham and Needham, who had a very favorable assessment of him, and in the presence of Serdyuchenko, had asked if he would like an opportunity to "run his own [Smarte Carte] airport" operation, thus inspiring her jealous, malicious attitude toward Plaintiff.

12. Smarte Carte rents rolling luggage carts at SFO through a system of cart dispensers called Cart Management Units ("CMUs"). The CMUs take U.S. Currency in the form of change, or one or five dollar bills, and take credit cards. The bill acceptors sometimes malfunction, rejecting the bills, and have a rather dim, hard-to-read LED display. The

carts are locked into the CMUs with a bolt that blocks the wheels of the carts, and it requires a good pull to release the carts, which can make it difficult for older people to release them. In order to provide customer service, Plaintiff often helped passengers renting carts to use the bill acceptors and pull the carts out of the CMU.

13. Davis is a convicted felon. Davis had conceived a malicious animus towards Plaintiff and desired to cause him trouble. On February 2, 2009, Davis told Serdyuchenko he had seen Plaintiff "selling carts," that is to say, giving carts to airport passengers and taking their money for himself, and not putting the money in the CMU. Davis told Serdyuchenko where he had observed Plaintiff selling carts in the vicinity of CMU # 30 during an approximately 20-minute time period on February 2, 2009. This was a maliciously false statement that Davis made with the intent to cause Plaintiff injury. Plaintiff had not sold any carts, but rather had simply been doing his job, assisting arriving passengers by helping them put money in the bill acceptor and pulling out the carts. The entire time period during which Davis said he watched Plaintiff selling carts was captured on SFO video surveillance and saved by Det. Kastell (the "February 2nd Video"). The February 2nd Video provided unmistakable evidence of Plaintiff's innocence of any criminal conduct.

14. Serdyuchenko had conceived personal animus for Plaintiff, because, among other things, Plaintiff was being considered for a promotion, and she wanted to get rid of him so he would not pose an obstacle to her career. Serdyuchenko told Needham what Davis had told her. Brigham sent an email to his Smarte Carte superior Larry Needham, a Smarte Carte managing agent, stating:

Larry,
Unbelievable. We received a tip from a non-Smarte Carte employee that Gary Arden was selling carts out of CMU 30. He doesn't have keys - the story goes that he simply took the money, put it in his pocket, and keyed out a cart. I told Alia to contact Frank at the police department and begin an investigation. We know the exact time it occurred and, if true, the film should show the money being put in his pocket. Evidently, catching 3 people isn't enough to set an example. ***Public executions may be necessary.*** (Emphasis added.)
Ron

15. Because Needham had been so impressed with his interview of Plaintiff, and was so shocked by this news, he replied with only one phrase, "I'm just sitting here shaking my head."

16. Serdyuchenko called Kastell and sent him a fax with information about Plaintiff, including his U.S. Passport and other private information. Kastell ran Plaintiff's California Law Enforcement Telecommunications Services report ("CLETS report"), which showed he had no criminal record. Kastell did not view the Februrary 2nd Video. Kastell did not run a CLETS report for Davis or Serdyuchenko.

17. Kastell created a police report in which he recorded Davis' false statements, and included in it the following false statement of his own:

"A few minutes later, a passenger approached this' unit and was met by this employee. The passenger handed the employee what appeared to be US currency. The employee turned to the rack where the Cartes are positioned, pulled a Carte from the rack and gave the passenger the Carte. This employee then put this money in his front left pants pocket at no time did this employee place the money in the unit."

18. This statement was not true. The entire period of time during which Kastell claimed to have been surveilling Plaintiff was recorded on SFO surveillance video, and was preserved (the "February 3rd Video"). The February 3rd Video shows Plaintiff placing money in CMU # 30 repeatedly, and shows him doing nothing more than helping people who needed carts, and on one occasion, even putting his own money in the bill feeder in advance of receiving money from an airport passenger.

19. Kastell also recorded a communication he said he had with Serdyuchenko, as follows:

"I also told her that so-far we have seen him put rental monies for a Carte in his pocket She said that his orders are to check all units in the airport and see that the other employees are doing their job. It is against company policy to work a unit in this way and if he is putting money in his pocket, he is stealing from the company."

20. On February 3, 2009, Kastell arrested Plaintiff and took him to the SFO police station. Kastell told Plaintiff he had seen him selling carts and demanded that he confess. Kastell and his partner Det. Corkery derided Plaintiff, made fun of his protestations of innocence, and demanded that he empty his pockets. Kastell confiscated all of Plaintiff's possessions, including the airport security badge he had been issued pursuant to 49 CFR

§ 1542.211 ("Plaintiff's Section 1542.211 ID"), his keys to the Smarte Carte office, his car and house keys, his wallet and identification, and $109 in U.S. Currency.

21. On the night of February 3, 2009, Kastell left Plaintiff at SFO with no money, locked out of his car, and unable to enter the Smarte Carte office to retrieve his other possessions. He borrowed money from a stranger to catch the BART home.

22. Kastell gave Plaintiff's Section 1542.211 ID and all of his possessions to Serdyuchenko, and booked Plaintiff's $109 into evidence.

23. On February 5, 2009, Plaintiff was terminated from his job at Smarte Carte, and given a letter signed by Serdyuchenko that said:

"On Tuesday, February 3, 2009, the San Mateo County police department removed your San Francisco Airport badge. It is a requirement of both Smarte Carte SFO and the San Francisco Airport that all employees have a valid airport badge. Therefore your employment with Smarte Carte, Inc. is being terminated effective immediately."

24. This letter from Serdyuchenko was false, because Smarte Carte had Plaintiff's Section 1542.211 ID in its possession.

25. Neither Kastell, the County, Smarte Carte, nor Serdyuchenko had the authority to revoke Plaintiff's Section 1542.211 ID, which was issued by the San Francisco Airport Commission (the "Commission"). In order to cancel Plaintiff's Section 1542.211 ID, by letter dated February 5, 2009, acting with prior and/or concurrent knowledge of her superiors at Smarte Carte, and on behalf of Smarte Carte, Serdyuchenko falsely told the SFO Security Access Office Badging Staff that Plaintiff was among employees who "have layoff and no longer require the badge."

26. At that time, Plaintiff was in the process of applying for a job with Covenant Aviation, the company that staffs the Transportation Security Agency, and Kastell's confiscation of his badge, followed by Serdyuchenko's cancellation of it by making the false statement that he had been laid off, had the effect of terminating Plaintiff's Section 1542.211 ID, thus depriving him of the ability to work for any entity at SFO.

27. By letter dated February 19, 2009, in compliance with 49 CRF § 1542.211, Plaintiff's counsel: (1) reported the loss or theft of Plaintiff's Section 1542.211 ID to the San

Francisco Airport Commission; (2) requested confirmation that Kastell had no authority to cancel Plaintiff's Section 1542.211 ID; (3) requested a copy of all documents recording any action the Commission had taken that would affect his right to hold a Section 1542.211 ID; (4) requested a copy of all Commission procedures issued pursuant to 49 CFR 1542.211(a)(3)(i) pertaining to the retrieval of Section 1542.211 IDs; (5) requested that "if the Commission has taken no action that would preclude him from holding an SFO security badge ... to allow him to clarify that status ... and avoid any further prejudice to his situation"; and (6) notified the Commission that, "in the event that the Commission has taken any action prejudicial to Mr. Arden's right to hold the SFO security badge," he was presenting "his formal request for a post-deprivation hearing to accord him all rights of due process that should be accorded to a person who has been subject to deprivation of protected property and liberty interests."

28. Prompted by those requests, Deputy City Attorney Michael Leon Guerrero spoke with Serdyuchenko and Smarte Carte. Serdyuchenko republished her own false statements and those of Davis and Kastell to Guerrero. On March 27, 2009, Serdyuchenko sent Guerrero a draft of a letter dated March 26, 2009, that they agreed that she would send to Plaintiff that stated, twenty-one days after he had already been terminated from Smarte Carte:

"On February 3, 2009, you were observed by Detective Frank Kastell of the San Mateo County Sheriff's Office renting carts directly to customers without using the collection system(s) of the cart rental machines, and putting the money in your pockets. This is a violation of Smarte Carte policy. Your employment with Smarte Carte was terminated on February 5, 2009 and you are not eligible for rehire."

29. Serdyuchenko sent the March 25th letter to Gary Arden with the prior knowledge and approval of her Smarte Carte superiors, and thereafter, they ratified her conduct.

30. On April 14, 2009, the County filed a criminal complaint in *People v. Gary A. Arden,* NM 383977A, charging Plaintiff with Embezzlement in violation of Cal. Penal Code Section 1054.5(B).

31. Plaintiff applied to receive unemployment compensation from the California Employment Development Department. Smarte Carte opposed Plaintiff's application and Plaintiff was denied unemployment benefits.

32. Plaintiff appealed his denial of unemployment benefits to the California Unemployment Insurance Appeals Board ("CUIAB"), and Serdyuchenko in an effort to say whatever was necessary to support the denial of Plaintiff's benefits, testified inconsistently, stating first that Plaintiff had been fired for stealing, and second, that he had not been fired for stealing, but rather for not having a security badge. Serdyuchenko also denied ever having told Kastell that Plaintiff was stealing. Brigham and Needham monitored Serdyuchenko's performance at the CUIAB hearing and exchanged emails about it, thus obtaining prior knowledge, granting prior approval and subsequently ratifying Serdyuchenko's conduct.

33. On April 22, 2009, Plaintiff's counsel requested that the County District Attorney produce copies of all video of Plaintiff taken by SFO security video cameras on February 2, 2009 and February 3, 2009, the days he was charged with embezzling.

34. Prosecutor County Dep. DA Tara Heumann sent the request to Kastell on April 29, 2009, but Kastell obstructed the process of production, first by ignoring the request for two months, then by producing digital video files that he knew could not be viewed without the use of a special computer program that he failed to supply to the prosecutor. This obstruction was accomplished because Kastell knew that the February 2nd Video and the February 3rd Video would completely exonerate Plaintiff, and he desired to continue the prosecution to satisfy his own malicious impulses in conspiracy with Serdyuchenko, Davis and Smarte Carte.

35. As a result of Kastell and the County's deliberately dilatory conduct, Plaintiff's counsel was required to file a discovery motion on August 3, 2009, and to continue the trial of the case several times.

36. On September 17, 2009, Serdyuchenko testified at a motion to suppress evidence. She testified that the letter she had sent to the SFO Security Access Office Badging Staff,

stating that Plaintiff was among employees who "have layoff and no longer require the badge" was not true, and that it was sent by mistake. Called by the prosecution, an in an effort to defeat Plaintiff's motion to suppress and continue the prosecution of Plaintiff, she testified that she had told Kastell that Plaintiff was stealing, which testimony contradicted her prior testimony at the CUIAB hearing. Serdyuchenko admitted she had never seen Plaintiff stealing. Serdyuchenko was represented by counsel retained by Smarte Carte at the hearing, who refused to allow Plaintiff's counsel to interview Serdyuchenko at any time.

37. After Plaintiff's counsel had established communication with Davis, and questioned him about his anticipated testimony, counsel for Smarte Carte communicated with Davis and advised him not to communicate with counsel for Plaintiff. Davis followed Smarte Carte's counsel's advice and refused to speak with Plaintiff's counsel. Serdyuchenko, Davis, and Smarte Carte counsel engaged in pleasant repartee in the San Mateo County Courthouse amongst themselves and refused to be interviewed by Plaintiff's counsel. Smarte Carte counsel went so far as to submit a memorandum to the prosecution in an effort to aid the prosecution of the case, and also submitted a complaint to the police, falsely stating Plaintiff's counsel had tried to intimidate Davis in the courthouse hallway.

38. On October 2, 2009, the County produced video files with the necessary "viewing software" that covered the time periods when Davis (on February 2nd) and Kastell (on February 3rd) falsesly stated they had witnessed Plaintiff "selling carts."

39. On October 16, 2009, Kastell was called to testify for the prosecution in opposition to Plaintiff's motion to suppress, and testified falsely, in order to deceive the prosecuting attorney, and to continue a prosecution for which he knew probable cause did not exist, and to satisfy his own malicious impulses toward Plaintiff in conspiracy with Davis, Serdyuchenko and Smarte Carte, that on February 3, 2009, he had observed Plaintiff "selling carts" during the time period before he arrested Plaintiff. When asked how much of the $109 he had confiscated from Plaintiff was "the proceeds of crime," he replied, "all of it."

40. On October 22, 2009, ruling on the motion to compel production of evidence previously submitted by Plaintiff, seeking production of all video footage from February 2, 2009 and February 3, 2009 during the periods when Plaintiff was on-shift at SFO, Superior Court Judge Gerald Buchwald entered an order compelling production of the eleven hours of missing footage.

41. The prosecution then notified Plaintiff's counsel that all of the missing eleven hours of video footage had been destroyed. On November 5, 2009, Plaintiff filed a motion to dismiss the prosecution for failure to produce the footage required by Judge Buchwald's order of October 22nd. In support of that motion, Plaintiff was required to make a showing that the evidence that had been destroyed would have been exculpatory. In support of that claim, Plaintiff's counsel had prepared to show Judge Buchwald the February 2nd Video and the February 3rd Video, that were clearly exculpatory.

42. As Plaintiff and his counsel waited to present the evidence in support of the motion to dismiss for destruction of exculpatory evidence, which would have revealed to Judge Buchwald that Det. Kastell had blatantly lied to the court on October 16, 2009, the prosecution moved to dismiss the prosecution, which was granted by Judge Buchwald.

43. As of this date, the County has not returned Plaintiff's $109 back, notwithstanding having filed a motion for return of the same with the Superior Court.

**FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

**FOR CONSPIRACY TO VIOLATE AND VIOLATION OF CIVIL RIGHTS**

44. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

45. The above-alleged events occurred because Davis, Serdyuchenko, Brigham and Kastell conspired to: foment Plaintiff's arrest without probable cause; subject him to the seizure of his property; and commence and continue a criminal prosecution against him without probable cause. The purpose of the defendants was to maliciously deprive him of his civil rights guaranteed under the Fourth, Fifth, Sixth and Fourteenth Amendments.

Smarte Carte further conspired with Kastell, Davis, and Airport Travel Service to achieve the same malicious ends.

46. Acting under color of law, Kastell deliberately produced a knowingly false police report, inserting false statements by Davis and Serdyuchenko, and recording his own "observations" of criminal conduct that never occurred, and delayed the production of exculpatory video evidence for five months, from late May until early October 2009, in an effort to prevent the revelation of the fact that he, Davis, and Serdyuchenko were forcing a prosecution for which probable cause was lacking onto the criminal docket, misleading the prosecutors of the San Mateo County District Attorney's Office into pursuing a private vendetta against an innocent man. Davis, Serdyuchenko, and Kastell were fully conscious of the harm they were doing to Plaintiff, and pursued it with commitment, lying repeatedly to the prosecutors to continue their cynical perversion of the criminal process to their own malicious purposes.

47. The acts of the defendants were an unconstitutional deprivation of Plaintiff's rights actionable under 42 U.S.C. § 1983.

48. Due to the above-alleged malicious, oppressive and fraudulent violations of Plaintiff's civil rights by Davis and Airport Travel Service, Serdyuchenko, Brigham, and Smarte Carte, and Kastell, Plaintiff has suffered and continues to suffer economic damages, including the loss of $109 in U.S. Currency, loss of employment, loss of revenue from employment, attorneys fees incurred in defending against a prosecution that was commenced and continued for ten months without probable cause, the deprivation of unemployment benefits that he was lawfully due, and damage to his financial life including the depletion of savings, the incurrence of crippling debt, and exposure to collection lawsuits. Further, due to these same causes, Plaintiff has experienced crushing, agonizing emotional suffering. Further, due to the false statements made by the defendants, and each of them, Plaintiff lost the society of persons formerly friendly to him, lost opportunities for economic benefit, and has suffered severe emotional distress.

49. Punitive damages against the defendants, and each of them, are warranted to deter future malicious, oppressive, and fraudulent conduct.

**SECOND CLAIM FOR RELIEF AGAINST DAVIS, AIRPORT TRAVEL SERVICES, SERDYUCHENKO, BRIGHAM AND SMARTE CARTE FOR SLANDER AND LIBEL PER SE**

50. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

51. Davis and Airport Travel Services made oral false statements of and concerning Plaintiff to Serdyuchenko, accusing him of a crime of dishonesty, and of being corrupt in his profession.

52. Serdyuchenko made oral false statements of and concerning Plaintiff to Brigham, accusing him of a crime of dishonesty, and of being corrupt in his profession, and Brigham republished the said statements to Needham.

53. Serdyuchenko, with the knowledge of Brigham, Needham, and Smarte Carte, made written false statements of and concerning Plaintiff to Dep. City Attorney Guerrero, accusing Plaintiff of a crime of dishonesty, and of being corrupt in his profession.

54. Due to the above-alleged conduct of said defendants, Plaintiff has suffered and continues to suffer economic damages, including loss of employment, loss of revenue from employment, attorneys fees incurred in defending against a prosecution that was commenced and continued for ten months without probable cause, the deprivation of unemployment benefits that he was lawfully due, and damage to his financial life including the depletion of savings, the incurrence of crippling debt, and exposure to collection lawsuits. Further, due to these same causes, Plaintiff has experienced crushing, agonizing emotional suffering. Further, due to the false statements made by the defendants, and each of them, Plaintiff lost the society of persons formerly friendly to him, lost opportunities for economic benefit, and has suffered severe emotional distress.

55. Punitive damages against the defendants, and each of them, are warranted to deter future malicious, oppressive, and fraudulent conduct.

**THIRD CLAIM FOR RELIEF AGAINST DAVIS, AIRPORT TRAVEL SERVICE, SERDYUCHENKO, BRIGHAM AND SMARTE CARTE FOR MALICIOUS PROSECUTION**

56. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

57. Davis, Serdyuchenko, Brigham and Smarte Carte instigated and maintained a prosecution against Plaintiff for which probable cause did not exist.

58. The prosecution against Plaintiff concluded with an adjudication favorable to Plaintiff when the San Mateo County District Attorney dismissed the case with prejudice.

59. Due to the above-alleged malicious prosecution. Plaintiff has suffered and continues to suffer economic damages, including loss of $109 in U.S. Currency, loss of employment, loss of revenue from employment, attorneys fees incurred in defending against a prosecution that was commenced and continued for ten months without probable cause, the deprivation of unemployment benefits that he was lawfully due, and damage to his financial life including the depletion of savings, the incurrence of crippling debt, and exposure to collection lawsuits. Further, due to these same causes, Plaintiff has experienced crushing, agonizing emotional suffering.

60. Punitive damages against the defendants, and each of them, are warranted to deter future malicious, oppressive, and fraudulent conduct.

**FOURTH CLAIM FOR RELIEF AGAINST DAVIS, AIRPORT TRAVEL SERVICE, SERDYUCHENKO, BRIGHAM AND SMARTE CARTE FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

61. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

62. The acts of Davis, Airport Travel Service, Serdyuchenko, Brigham and Smarte Carte as above-alleged, were intentional, reckless acts of outrageous conduct, that were intended to cause, and have caused Plaintiff to suffer wrongful arrest, prosecution and ostracism,

the natural effect of which would be to cause severe, intense and prolonged emotional distress to Plaintiff.

63. Plaintiff has suffered, and continues to suffer, severe, intense and prolonged emotional distress in the form of humiliation, betrayal, anger, anxiety, frustration, depression, and powerlessness to remedy his situation.

64. Punitive damages against the defendants, and each of them, are warranted to deter future malicious, oppressive, and fraudulent conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment against defendants as follows:

ON THE FIRST CLAIM FOR RELIEF:

1. For economic damages according to proof;
2. For non-economic damages according to proof;
3. For attorneys fees and expert fees pursuant to 42 U.S.C. § 1988(b) and (c);
4. For punitive damages;

ON THE SECOND CLAIM FOR RELIEF:

5. For economic damages according to proof;
6. For non-economic damages according to proof;
7. For punitive damages;

ON THE THIRD CLAIM FOR RELIEF:

8. For economic damages according to proof;
9. For non-economic damages according to proof;
10. For punitive damages;

ON THE FOURTH CLAIM FOR RELIEF:

11. For economic damages according to proof;
12. For non-economic damages according to proof;
13. For punitive damages;

ON ALL CLAIMS FOR RELIEF, for judgment and such other and further relief as the Court deems just.

Dated: January 29, 2010

CHARLES CARREON, ESQ.

CHARLES CARREON (127139)
Attorney for plaintiff Gary Arden

**JURY DEMAND**

Pursuant to F.R.Civ.P. 38(b), Plaintiff demands a jury trial.

Dated: January 29, 2010

CHARLES CARREON, ESQ.

CHARLES CARREON (127139)
Attorney for plaintiff Gary Arden