CHARLES CARREON (127139)
CHARLES CARREON, ESQ.
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel: 520-841-0835
Attorney for Plaintiff Gary Arden

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GARY ARDEN,<br><br>  Plaintiff,<br><br>  vs.<br><br>FRANK KASTELL, LINARD DAVIS, AIRPORT TRAVEL AGENCY, INC., ALLA SERDYUCHENKO, RON BRIGHAM, SMARTE CARTE, INC., and Does 1 - 10<br><br>  Defendants. | Case No.: 3:10-cv-00436 JL<br><br>FIRST AMENDED COMPLAINT FOR CONSPIRACY TO VIOLATE, AND FOR VIOLATION OF CIVIL RIGHTS, BANE ACT VIOLATIONS, MALICIOUS PROSECUTION, CONVERSION, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, SLANDER PER SE, AND NEGLIGENCE<br><br>JURY TRIAL DEMANDED |

**THE PARTIES**

1. Plaintiff Gary Arden ("Plaintiff") is a citizen of the United States, a resident of San Francisco, California.

2. Defendant Frank Kastell ("Kastell") is a detective in the San Mateo County Sheriff's Office who at all times was acting under color of law.

3. Defendant Airport Travel Agency, Inc. ("Airport Travel") is a California corporation.

4. Defendant Linard Davis ("Davis") is the owner and managing agent of Airport Travel Agency, Inc., located at San Francisco International Airport, for whose wrongful actions Airport Travel is liable.

5. Defendant Smarte Carte, Inc. ("Smarte Carte") is a Minnesota corporation with a California base of operations at 2 Terminal, San Francisco, California 94128.

6. Defendants Ron Brigham ("Brigham") and Alla Serdyuchenko ("Serdyuchenko") are, and all times alleged herein were, managing agents and employees of Smarte Carte, Inc., for whose wrongful actions Smarte Carte is liable. Larry Needham ("Needham") is also a managing agent of Smarte Carte.

7. Does 1 – 10 are additional persons responsible in some way for the harms suffered by plaintiff as alleged herein, and will be named by their true names upon discovery thereof.

## SUBJECT MATTER JURISDICTION

8. This is an action under 42 U.S.C §§ 1983; wherefore, this Court has jurisdiction under 28 U.S.C. § 1338.

## VENUE

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2).

## INTRADISTRICT ASSIGNMENT

10. This case is assignable to the San Francisco District, pursuant to Civil L.R. 3-2(c).

## FACTS RELEVANT TO ALL CLAIMS FOR RELIEF

11. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

12. Plaintiff has a substantial background in the security industry and a perfectly clean criminal record. Plaintiff was employed by Smarte Carte as an Assistant Terminal Manager at San Francisco International Airport ("SFO") starting in June 2008, and was so employed during the first week of February 2009. Plaintiff was on track to receive a promotion and had been interviewed by Brigham and Needham, who had a very favorable assessment of him, and in the presence of Serdyuchenko, had asked if he would like an opportunity to "run his own [Smarte Carte] airport" operation, thus inspiring her jealous, malicious attitude toward Plaintiff.

13. Smarte Carte rents rolling luggage carts at SFO through a system of cart dispensers called Cart Management Units ("CMUs"). The CMUs take U.S. Currency in the form of

change, or one or five dollar bills, and take credit cards. The bill acceptors sometimes malfunction, rejecting the bills, and have a rather dim, hard-to-read LED display. The carts are locked into the CMUs with a bolt that blocks the wheels of the carts, and it requires a good pull to release the carts, which can make it difficult for older people to release them. In order to provide customer service, Plaintiff often helped passengers renting carts to use the bill acceptors and pull the carts out of the CMU.

14. Davis is a convicted felon. Davis had conceived a malicious animus towards Plaintiff and desired to cause him trouble. On February 2, 2009, Davis told Serdyuchenko he had seen Plaintiff "selling carts," that is to say, giving carts to airport passengers and taking their money for himself, and not putting the money in the CMU. Davis told Serdyuchenko where he had observed Plaintiff selling carts in the vicinity of CMU # 30 during an approximately 20-minute time period on February 2, 2009. This was a maliciously false statement that Davis made with the intent to cause Plaintiff injury. Plaintiff had not sold any carts, but rather had simply been doing his job, assisting arriving passengers by helping them put money in the bill acceptor and pulling out the carts. The entire time period during which Davis said he watched Plaintiff selling carts was captured on SFO video surveillance and saved by Det. Kastell (the "February 2nd Video"). The February 2nd Video provided unmistakable evidence of Plaintiff's innocence of any criminal conduct.

15. Serdyuchenko had conceived personal animus for Plaintiff, because, among other things, Plaintiff was being considered for a promotion, and she wanted to get rid of him so he would not pose an obstacle to her career. Serdyuchenko told Needham what Davis had told her. Brigham sent an email to his Smarte Carte superior Larry Needham, a Smarte Carte managing agent, stating:

> Larry,
> Unbelievable. We received a tip from a non-Smarte Carte employee that Gary Arden was selling carts out of CMU 30. He doesn't have keys - the story goes that he simply took the money, put it in his pocket, and keyed out a cart. I told Alia to contact Frank at the police department and begin an investigation. We know the exact time it occurred and, if true, the film should show the money being put in

his pocket. Evidently, catching 3 people isn't enough to set an example. ***Public executions may be necessary.***  (Emphasis added.)
Ron

16. Because Needham had been so impressed with his interview of Plaintiff, and was so shocked by this news, he replied with only one phrase, "I'm just sitting here shaking my head."

17. Serdyuchenko called Kastell and sent him a fax with information about Plaintiff, including his U.S. Passport and other private information.  Kastell ran Plaintiff's California Law Enforcement Telecommunications Services report ("CLETS report"), which showed he had no criminal record.  Kastell did not view the Februrary 2nd Video.  Kastell did not run a CLETS report for Davis or Serdyuchenko.

18. Kastell created a police report in which he recorded Davis' false statements, and included in it the following false statement of his own:

"A few minutes later, a passenger approached this' unit and was met by this employee. The passenger handed the employee what appeared to be US currency. The employee turned to the rack where the Cartes are positioned, pulled a Carte from the rack and gave the passenger the Carte. This employee then put this money in his front left pants pocket at no time did this employee place the money in the unit."

19. This statement was not true.  The entire period of time during which Kastell claimed to have been surveilling Plaintiff was recorded on SFO surveillance video, and was preserved (the "February 3rd Video").  The February 3rd Video shows Plaintiff placing money in CMU # 30 repeatedly, and shows him doing nothing more than helping people who needed carts, and on one occasion, even putting his own money in the bill feeder in advance of receiving money from an airport passenger.

20. Kastell also recorded a communication he said he had with Serdyuchenko, as follows:

"I also told her that so-far we have seen him put rental monies for a Carte in his pocket She said that his orders are to check all units in the airport and see that the other employees are doing their job. It is against company policy to work a unit in this way and if he is putting money in his pocket, he is stealing from the company."

21. On February 3, 2009, Kastell arrested Plaintiff and took him to the SFO police station.  Kastell told Plaintiff he had seen him selling carts and demanded that he confess.  Kastell and his partner Det. Corkery derided Plaintiff, made fun of his protestations of innocence, and demanded that he empty his pockets.  Kastell confiscated all of Plaintiff's

possessions, including the airport security badge he had been issued pursuant to 49 CFR § 1542.211 ("Plaintiff's Section 1542.211 ID"), his keys to the Smarte Carte office, his car and house keys, his wallet and identification, and $109 in U.S. Currency.

22. On the night of February 3, 2009, Kastell left Plaintiff at SFO with no money, locked out of his car, and unable to enter the Smarte Carte office to retrieve his other possessions. He borrowed money from a stranger to catch the BART home.

23. Kastell gave Plaintiff's Section 1542.211 ID and all of his possessions to Serdyuchenko, and booked Plaintiff's $109 into evidence.

24. On February 5, 2009, Plaintiff was terminated from his job at Smarte Carte, and given a letter signed by Serdyuchenko that said:

"On Tuesday, February 3, 2009, the San Mateo County police department removed your San Francisco Airport badge. It is a requirement of both Smarte Carte SFO and the San Francisco Airport that all employees have a valid airport badge. Therefore your employment with Smarte Carte, Inc. is being terminated effective immediately."

25. This letter from Serdyuchenko was false, because Smarte Carte had Plaintiff's Section 1542.211 ID in its possession.

26. Neither Kastell, the County, Smarte Carte, nor Serdyuchenko had the authority to revoke Plaintiff's Section 1542.211 ID, which was issued by the San Francisco Airport Commission (the "Commission"). In order to cancel Plaintiff's Section 1542.211 ID, by letter dated February 5, 2009, acting with prior and/or concurrent knowledge of her superiors at Smarte Carte, and on behalf of Smarte Carte, Serdyuchenko falsely told the SFO Security Access Office Badging Staff that Plaintiff was among employees who "have layoff and no longer require the badge."

27. At that time, Plaintiff was in the process of applying for a job with Covenant Aviation, the company that staffs the Transportation Security Agency, and Kastell's confiscation of his badge, followed by Serdyuchenko's cancellation of it by making the false statement that he had been laid off, had the effect of terminating Plaintiff's Section 1542.211 ID, thus depriving him of the ability to work for any entity at SFO.

28. By letter dated February 19, 2009, in compliance with 49 CRF § 1542.211, Plaintiff's counsel: (1) reported the loss or theft of Plaintiff's Section 1542.211 ID to the San Francisco Airport Commission; (2) requested confirmation that Kastell had no authority to cancel Plaintiff's Section 1542.211 ID; (3) requested a copy of all documents recording any action the Commission had taken that would affect his right to hold a Section 1542.211 ID; (4) requested a copy of all Commission procedures issued pursuant to 49 CFR 1542.211(a)(3)(i) pertaining to the retrieval of Section 1542.211 IDs; (5) requested that "if the Commission has taken no action that would preclude him from holding an SFO security badge … to allow him to clarify that status … and avoid any further prejudice to his situation"; and (6) notified the Commission that, "in the event that the Commission has taken any action prejudicial to Mr. Arden's right to hold the SFO security badge," he was presenting "his formal request for a post-deprivation hearing to accord him all rights of due process that should be accorded to a person who has been subject to deprivation of protected property and liberty interests."

29. Prompted by those requests, Deputy City Attorney Michael Leon Guerrero spoke with Serdyuchenko and Smarte Carte. On March 27, 2009, Serdyuchenko sent Guerrero a draft of a letter dated March 26, 2009, that they agreed that she would send to Plaintiff that stated, twenty-one days after he had already been terminated from Smarte Carte:

"On February 3, 2009, you were observed by Detective Frank Kastell of the San Mateo County Sheriff's Office renting carts directly to customers without using the collection system(s) of the cart rental machines, and putting the money in your pockets. This is a violation of Smarte Carte policy. Your employment with Smarte Carte was terminated on February 5, 2009 and you are not eligible for rehire."

30. Serdyuchenko sent the March 25th letter to Gary Arden with the prior knowledge and approval of her Smarte Carte superiors, and thereafter, they ratified her conduct.

31. On April 14, 2009, the County filed a criminal complaint in *People v. Gary A. Arden,* NM 383977A, charging Plaintiff with Embezzlement in violation of Cal. Penal Code Section 1054.5(B).

32. On April 22, 2009, Plaintiff's counsel requested that the County District Attorney produce copies of all video of Plaintiff taken by SFO security video cameras on February 2, 2009 and February 3, 2009, the days he was charged with embezzling.

33. Prosecutor County Dep. DA Tara Heumann sent the request to Kastell on April 29, 2009, but Kastell obstructed the process of production, first by ignoring the request for two months, then by producing digital video files that he knew could not be viewed without the use of a special computer program that he failed to supply to the prosecutor. This obstruction was accomplished because Kastell knew that the February 2nd Video and the February 3rd Video would completely exonerate Plaintiff, and he desired to continue the prosecution to satisfy his own malicious impulses in conspiracy with Serdyuchenko, Davis and Smarte Carte.

34. As a result of Kastell and the County's deliberately dilatory conduct, Plaintiff's counsel was required to file a discovery motion on August 3, 2009, and to continue the trial of the case several times.

35. On September 17, 2009, Serdyuchenko testified at a motion to suppress evidence. Serdyuchenko was represented by counsel retained by Smarte Carte at the hearing, who refused to allow Plaintiff's counsel to interview Serdyuchenko at any time. Called by the prosecution, and in order to continuing misinforming the prosecutor concerning the merits of the case, and to continue the malicious prosecution of Plaintiff, Serdyuchenko testified that she had told Kastell that Plaintiff was stealing. This testimony contradicted Serdyuchenko's prior testimony at a California Unemployment Insurance Appeals Board hearing, where she had testified that she never told Kastell that Plaintiff was stealing. Serdyuchenko also admitted that the letter she had sent to the SFO Security Access Office Badging Staff, stating that Plaintiff was among employees who "have layoff and no longer require the badge" was not true.

36. After Plaintiff's counsel had established communication with Davis, and questioned him about his anticipated testimony, counsel for Smarte Carte communicated with Davis and advised him not to communicate with counsel for Plaintiff. Davis followed Smarte

Carte's counsel's advice and refused to speak with Plaintiff's counsel. Serdyuchenko, Davis, and Smarte Carte counsel conversed freely amongst themselves in the San Mateo County Courthouse, and refused to be interviewed by Plaintiff's counsel. Acting on behalf of Smarte Carte, Serdyuchenko and Brigham, their counsel submitted a memorandum to the prosecution in an effort to aid the prosecution of the case, and submitted a complaint to the police, falsely stating Plaintiff's counsel had tried to intimidate Davis in the courthouse hallway.

37. On October 2, 2009, the County produced video files with the necessary "viewing software" that covered the time periods when Davis (on February 2nd) and Kastell (on February 3rd) falsely stated they had witnessed Plaintiff "selling carts."

38. On October 16, 2009, Kastell was called to testify for the prosecution in opposition to Plaintiff's motion to suppress, and testified falsely, in order to deceive the prosecuting attorney, and to continue a prosecution for which he knew probable cause did not exist, and to satisfy his own malicious impulses toward Plaintiff in conspiracy with Davis, Serdyuchenko and Smarte Carte, that on February 3, 2009, he had observed Plaintiff "selling carts" during the time period before he arrested Plaintiff. When asked how much of the $109 he had confiscated from Plaintiff was "the proceeds of crime," he replied, "all of it."

39. On October 22, 2009, ruling on the motion to compel production of evidence previously submitted by Plaintiff, seeking production of all video footage from February 2, 2009 and February 3, 2009 during the periods when Plaintiff was on-shift at SFO, Superior Court Judge Gerald Buchwald entered an order compelling production of the eleven hours of missing footage.

40. The prosecution then notified Plaintiff's counsel that all of the missing eleven hours of video footage had been destroyed. On November 5, 2009, Plaintiff filed a motion to dismiss the prosecution for failure to produce the footage required by Judge Buchwald's order of October 22nd. In support of that motion, Plaintiff was required to make a showing that the evidence that had been destroyed would have been exculpatory. In

support of that claim, Plaintiff's counsel had prepared to show Judge Buchwald the February 2nd Video and the February 3rd Video, that were clearly exculpatory.

41. As Plaintiff and his counsel waited to present the evidence in support of the motion to dismiss for destruction of exculpatory evidence, which would have revealed to Judge Buchwald that Det. Kastell had blatantly lied to the court on October 16, 2009, the prosecution moved to dismiss the prosecution, which was granted by Judge Buchwald in the interests of justice.

42. The County did not return Plaintiff's $109 until the San Mateo County Superior Court ordered it returned pursuant to Plaintiff's noticed motion pursuant to Cal. Penal Code § 1408 on February 4, 2010.

## FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
## FOR CONSPIRACY TO VIOLATE AND VIOLATION OF CIVIL RIGHTS

43. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

44. The above-alleged events occurred because Davis, Serdyuchenko, Brigham and Kastell conspired to: foment Plaintiff's arrest without probable cause; subject him to the seizure of his property, to wit US Currency and personal possessions; subject him to deprivation of a protected property right, to wit, Plaintiff's Section 1542.211 ID; and commence and continue a criminal prosecution against him without probable cause. The purpose of the defendants was to maliciously deprive him of his civil rights guaranteed under the Fourth, Fifth, Sixth and Fourteenth Amendments. Smarte Carte further conspired with Kastell, Davis, and Airport Travel Service to achieve the same malicious ends.

45. Acting under color of law, and with full knowledge that Plaintiff was innocent of any crime, that questioning him could not produce a truthful confession, and that searching him could not lead to the discovery of any evidence of a crime, Kastell: arrested Plaintiff without probable cause; questioned Plaintiff without advising him of his right to counsel, his right to remain silent, or his right to have counsel present during interrogation; searched his person without a warrant, consent, or reasonable cause; seized his Plaintiff's

Section 1542.211 ID; produced a knowingly false police report, inserting false statements by Davis and Serdyuchenko, and fabricating his own "observations" of criminal conduct that never occurred; failed to produce exculpatory video when requested by Deputy District Attorney Tara Heumann; produced video evidence that could not be viewed by the District Attorney or Plaintiff's counsel to further delay and prolong the prosecution; delayed production of viewable exculpatory video evidence until October 2009; destroyed approximately eleven hours of other exculpatory video evidence that he knew would be relevant to Plaintiff's defense; prepared false testimony, and testified falsely in response to Deputy District Attorney Sharon Lee's questions on the witness stand, swearing falsely that he had observed Plaintiff embezzling, when he had not; and in other ways not yet fully known to Plaintiff, actively misinformed the San Mateo County District Attorney's Office of the true facts of the case, and of the fact that exculpatory video evidence existed.

46. Through this entire process, Kastell acted with the knowledge, consent and approval of Davis, Serdyuchenko, Brigham and Smarte Carte to force a prosecution for which probable cause was lacking onto the criminal docket, misleading the prosecutors of the San Mateo County District Attorney's Office into pursuing a private vendetta against an innocent man. Kastell, Davis, Serdyuchenko, Brigham, and Smarte Carte were fully conscious of the harm they were doing to Plaintiff, and pursued it with commitment, lying repeatedly to the prosecutors to continue their cynical perversion of the criminal process to their own malicious purposes.

47. Kastell unlawfully and acting under color of law, confiscated Plaintiff's Section 1542.211 ID, thus invading Plaintiff's Fourteenth Amendment due-process protected property interest in possessing the same. Acting on behalf of Smarte Carte in a single course of conduct aimed at depriving Plaintiff of his Fourteenth Amendment property rights, Serdyuchenko unlawfully retained Plaintiff's Section 1542.211 ID in Smarte Carte's possession, and then cancelled its effectiveness by falsely reporting to the Airport Commission Badging Staff that Plaintiff had been laid off. On behalf of Smarte Carte

and on his own behalf, Brigham approved, ratified, and gave corporate protection to the foregoing acts of Serdyuchenko.

48. The acts of the defendants were an unconstitutional deprivation of Plaintiff's rights actionable under 42 U.S.C. § 1983.

49. Due to the above-alleged malicious, oppressive and fraudulent violations of Plaintiff's civil rights by Davis and Airport Travel Service, Serdyuchenko, Brigham, and Smarte Carte, and Kastell, Plaintiff suffered personal injury in the form of lost liberty during the period of his arrest and on each occasion when he was compelled under threat of arrest to appear in court to defend himself against false charges, and suffered and continues to suffer economic damages, including deprivation and lost use of $109 in U.S. Currency, loss of his Plaintiff's Section 1542.211 ID, loss of employment, loss of revenue from employment, attorneys fees incurred in defending against a prosecution that was commenced and continued for ten months without probable cause, and damage to his financial life including the depletion of savings, the incurrence of crippling debt, and exposure to collection lawsuits. Further, due to these same causes, Plaintiff has experienced crushing, agonizing emotional suffering. Further, due to the false statements made by the defendants, and each of them, Plaintiff lost the society of persons formerly friendly to him, lost opportunities for economic benefit, and has suffered severe emotional distress with attendant physical symptoms, and medical expenses for treatment thereof. Plaintiff's reputation as an honest employee has been irreparably damaged in the SFO airport employment community and he has been denied opportunities for advancement in his current job.

50. Punitive damages against the defendants, and each of them, are warranted to deter future malicious, oppressive, and fraudulent conduct.

## SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
## FOR BANE ACT VIOLATIONS

51. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

52. By committing the above-alleged acts, Davis, Serdyuchenko, Brigham, Smarte Carte and Kastell interfered with Plaintiff's civil rights under the Fourth, Fifth, Sixth and Fourteenth Amendments, and under Article 1, Section 13 of the California Constitution and other California laws by means of threats, intimidation, and coercion.

53. With full knowledge that Plaintiff was innocent of any crime, Davis, Serdyuchenko, and Brigham conspired with Kastell, to falsely arrest Plaintiff's person, to cause his person to be searched, to cause him to be subjected to coercive, threatening, intimidating questioning, to cause Plaintiff's Section 1542.211 ID to be confiscated, to cause Plaintiff's money and personal possessions to be confiscated, and to cause Plaintiff to be subjected to efforts to coerce him into making a false confession. Serdyuchenko and Brigham acted as authorized agents of Smarte Carte when they instigated and took advantage of the acts of coercion, intimidation, and threat committed directly Kastell, acting as the agent of said corporate defendants.

54. Using threat, intimidation, and coercion, Kastell unlawfully and acting under color of law, confiscated Plaintiff's Section 1542.211 ID, thus invading Plaintiff's Fourteenth Amendment due-process protected property interest in possessing the same. Acting on behalf of Smarte Carte in a single course of conduct aimed at depriving Plaintiff of his Fourteenth Amendment property rights, Serdyuchenko unlawfully retained Plaintiff's Section 1542.211 ID in Smarte Carte's possession, and then cancelled its effectiveness by falsely reporting to the Commission Badging Staff that Plaintiff had been laid off. On behalf of Smarte Carte and on his own behalf, Brigham approved, ratified, and gave corporate protection to the foregoing acts of Serdyuchenko.

55. The acts of said defendants were a violation of Plaintiff's rights under the Federal and California Constitutions, actionable under Cal. Civil Code § 52.1.

56. Due to the above-alleged malicious, oppressive and fraudulent violations of Plaintiff's civil rights by Davis and Airport Travel Service, Serdyuchenko, Brigham, and Smarte Carte, and Kastell, Plaintiff suffered personal injury in the form of lost liberty during the period of his arrest, and suffered and continues to suffer economic damages, including

deprivation and lost use of $109 in U.S. Currency, loss of Plaintiff's Section 1542.211 ID, loss of employment, loss of revenue from employment, attorneys fees, damage to his financial life including the depletion of savings, the incurrence of crippling debt, and exposure to collection lawsuits.  Further, due to these same causes, Plaintiff has experienced crushing, agonizing emotional suffering.  Further, Plaintiff lost opportunities for economic benefit, and has suffered severe emotional distress with attendant physical symptoms, and medical expenses for treatment thereof.  Plaintiff's reputation as an honest employee has been irreparably damaged in the SFO airport employment community and he has been denied opportunities for advancement in his current job.

57. Punitive damages against the defendants, and each of them, are warranted to deter future malicious, oppressive, and fraudulent conduct.

## THIRD CLAIM FOR RELIEF AGAINST
## DAVIS, AIRPORT TRAVEL SERVICE, SERDYUCHENKO, BRIGHAM AND SMARTE CARTE FOR MALICIOUS PROSECUTION

58. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

59. Davis, Airport Travel Service, Serdyuchenko, Brigham and Smarte Carte instigated and maintained a prosecution against Plaintiff for which probable cause did not exist.

60.  The prosecution against Plaintiff concluded with an adjudication favorable to Plaintiff when the San Mateo County District Attorney moved to dismiss the case with prejudice, and Judge Buchwald dismissed it "in the interests of justice," which in the idiom of the criminal courts, means for lack of probable cause to support the prosecution.

61. Due to the above-alleged malicious prosecution, Plaintiff suffered personal injury in the form of lost liberty during the period of his arrest and on each occasion when he was compelled under threat of arrest to appear in court to defend himself against false charges, and suffered and continues to suffer economic damages, including deprivation and lost use of $109 in U.S. Currency, loss of employment, loss of revenue from employment, attorneys fees incurred in defending against a prosecution that was

commenced and continued for ten months without probable cause, and damage to his financial life including the depletion of savings, the incurrence of crippling debt, and exposure to collection lawsuits. Further, due to these same causes, Plaintiff has experienced crushing, agonizing emotional suffering. Further, Plaintiff lost opportunities for economic benefit, and has suffered severe emotional distress with attendant physical symptoms, and medical expenses for treatment thereof. Plaintiff has been denied opportunities for advancement in his current job.

62. Punitive damages against said defendants, and each of them, are warranted to deter future malicious, oppressive, and fraudulent conduct.

## FOURTH CLAIM FOR RELIEF AGAINST
## SERDYUCHENKO, BRIGHAM AND SMARTE CARTE FOR CONVERSION

63. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

64. Plaintiff had a right to ownership and possession of Plaintiff's Section 1542.211 ID, that he had obtained solely by virtue of his own compliance with the terms of the statutory and regulatory scheme established by 49 U.S.C. § 44935.

65. Serdyuchenko, acting on behalf of Smarte Carte with prior knowledge and/or post-action ratification by Brigham, intentionally deprived Plaintiff of the use and possession of Plaintiff's Section 1542.211 ID, and converted the same to Smarte Carte's own use and possession.

66. Due to the above-alleged conversion, Plaintiff suffered loss of employment, loss of revenue from employment, damage to his financial life including the depletion of savings, the incurrence of crippling debt, exposure to collection lawsuits, lost opportunities for economic benefit, and denial of opportunities for advancement in his current job. Plaintiff further suffered severe emotional distress with attendant physical symptoms, and medical expenses for treatment thereof.

67. Punitive damages against said defendants, and each of them, are warranted to deter future malicious, oppressive, and fraudulent conduct.

///

///

## FIFTH CLAIM FOR RELIEF AGAINST
## SERDYUCHENKO, BRIGHAM AND SMARTE CARTE FOR INTENTIONAL
## INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

68. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

69. Plaintiff ownership and possession of Plaintiff's Section 1542.211 ID was a property right and employment status identifier that he had obtained solely by virtue of his own compliance with the terms of the statutory and regulatory scheme established by 49 U.S.C. § 44935 and his spotless character.  Possession of Plaintiff's Section 1542.211 ID was pre-requisite to employment in any system involving airport security or provision of services within any U.S. airport nationwide.

70. Serdyuchenko, acting on behalf of Smarte Carte with prior knowledge and/or post-action ratification by Brigham intentionally deprived Plaintiff of the use and possession of Plaintiff's Section 1542.211 ID, and thereby interfered with Plaintiff's future employment opportunities and future economic advantage.

71. Due to the above-alleged interference with his employment opportunities and future economic advantage, Plaintiff suffered loss of employment, loss of revenue from employment, damage to his financial life including the depletion of savings, the incurrence of crippling debt, exposure to collection lawsuits, lost opportunities for economic benefit, and denial of opportunities for advancement in his current job. Plaintiff further suffered severe emotional distress with attendant physical symptoms, and medical expenses for treatment thereof.

72. Punitive damages against said defendants, and each of them, are warranted to deter future malicious, oppressive, and fraudulent conduct.

## SIXTH CLAIM FOR RELIEF AGAINST
## DAVIS AND AIRPORT TRAVEL SERVICE

### FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

73. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

74. The acts of Davis and Airport Travel Service were intentional, reckless acts of outrageous conduct, that were intended to cause, and have caused Plaintiff to suffer wrongful arrest, prosecution and ostracism, the natural effect of which would be to cause severe, intense and prolonged emotional distress to Plaintiff.

75. Due to the above-alleged intentional infliction of emotional distress by Davis and Airport Travel Service, Plaintiff has suffered, and continues to suffer, severe, intense and prolonged emotional distress in the form of humiliation, betrayal, anger, anxiety, frustration, depression, and powerlessness to remedy his situation.

76. Due to the above-alleged intentional infliction of emotional distress by Davis and Airport Travel Service, Plaintiff suffered personal injury in the form of lost liberty, suffered financial damages, lost opportunities for economic benefit, and suffered severe emotional distress with attendant physical symptoms, and medical expenses for treatment thereof.

77. Punitive damages against the defendants, and each of them, are warranted to deter future malicious, oppressive, and fraudulent conduct.

### SEVENTH CLAIM FOR RELIEF AGAINST
### DAVIS AND AIRPORT TRAVEL SERVICE
### FOR NEGLIGENCE

78. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

79. Davis and Airport Travel Service owed a duty of due care to Plaintiff to make no statements regarding him that would cause him to be arrested, questioned coercively, and subjected to threat and intimidation, to be searched and deprived of the use and possession of his personal property, to be subjected to prosecution without probable cause, to lose his employment, and to suffer the personal, financial, and emotional injuries alleged herein.

80. Davis and Airport Travel Service breached their duty of due care to Plaintiff by making the statement to Serdyuchenko that Plaintiff had been embezzling from Smarte Carte when in fact they knew, or in the exercise of reasonable care should have known, that such a statement was false and would foreseeably cause the injuries to Plaintiff herein alleged.

81. Due to the above-alleged breaches of their duty of due care by Davis and Airport Travel Service, Plaintiff suffered personal injury in the form of lost liberty, suffered financial damages, lost opportunities for economic benefit, and suffered severe emotional distress with attendant physical symptoms, and medical expenses for treatment thereof.

## EIGHTH CLAIM FOR RELIEF AGAINST DAVIS AND AIRPORT TRAVEL SERVICES, FOR SLANDER PER SE

82. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

83. Davis and Airport Travel Services published oral false statements of and concerning Plaintiff to Smarte Carte, informing Serdyuchenko in her position as Smarte Carte's SFO operations manager, accusing him of a crime of dishonesty, and of being corrupt in his profession.

84. Due to the above-alleged publication of false statements of and concerning Plaintiff by Davis and Airport Travel Service, Plaintiff suffered loss of the society of persons formerly friendly to him, suffered financial damages, lost opportunities for economic benefit, and suffered severe emotional distress with attendant physical symptoms, and medical expenses for treatment thereof.  Plaintiff's reputation as an honest employee has been irreparably damaged in the SFO airport employment community and he has been denied opportunities for advancement in his current job.

85. Punitive damages against said defendants, and each of them, are warranted to deter future malicious, oppressive, and fraudulent conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment against defendants as follows:

ON THE FIRST CLAIM FOR RELIEF:

    1. For economic damages according to proof not less than $150,000;

    2. For non-economic damages according to proof not less than $1,000,000;

    3. For attorneys fees and expert fees pursuant to 42 U.S.C. § 1988(b) and (c);

    4. For punitive damages according to proof not less than $3,000,000;

ON THE SECOND CLAIM FOR RELIEF:

    5. For a statutory minimum award in the amount of $25,000;

    6. For economic damages according to proof not less than $150,000;

    7. For non-economic damages according to proof not less than $1,000,000;

    8. For treble damages;

    9. For punitive damages according to proof not less than $3,000,000;

    10. For attorneys fees pursuant to Cal. Civil Code § 52.1;

ON THE THIRD CLAIM FOR RELIEF:

    11. For economic damages according to proof not less than $150,000;

    12. For non-economic damages according to proof not less than $1,000,000;

    13. For punitive damages according to proof not less than $3,000,000;

ON THE FOURTH CLAIM FOR RELIEF:

    14. For economic damages according to proof not less than $150,000;

    15. For non-economic damages according to proof not less than $1,000,000;

    16. For punitive damages according to proof not less than $3,000,000;

ON THE FIFTH CLAIM FOR RELIEF:

    17. For economic damages according to proof not less than $150,000;

    18. For non-economic damages according to proof not less than $1,000,000;

    19. For punitive damages according to proof not less than $3,000,000;

ON THE SIXTH CLAIM FOR RELIEF:

    20. For economic damages according to proof not less than $150,000;

    21. For non-economic damages according to proof not less than $1,000,000;

    22. For punitive damages according to proof not less than $3,000,000;

ON THE SEVENTH CLAIM FOR RELIEF:

23. For economic damages according to proof not less than $150,000;

24. For non-economic damages according to proof not less than $1,000,000;

25. For punitive damages according to proof not less than $3,000,000;

ON THE EIGHTH CLAIM FOR RELIEF:

26. For economic damages according to proof not less than $150,000;

27. For non-economic damages according to proof not less than $1,000,000;

ON ALL CLAIMS FOR RELIEF, for judgment and such other and further relief as the Court deems just.

Dated:  March 25, 2010                         CHARLES CARREON, ESQ.

                                          s/Charles Carreon/s
                                          CHARLES CARREON (127139)
                                          Attorney for plaintiff Gary Arden

## JURY DEMAND

Pursuant to F.R.Civ.P. 38(b), Plaintiff demands a jury trial.

Dated: March 25, 2010                    CHARLES CARREON, ESQ.

                                                 s/Charles Carreon/s  
                                               CHARLES CARREON (127139)  
                                               Attorney for plaintiff Gary Arden