JOHN C. BEIERS, COUNTY COUNSEL (SBN 144282)
By: David A. Levy, Deputy (SBN 77181)
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA 94063
Telephone: (650) 363-4756
Facsimile: (650) 363-4034
E-mail: dlevy@co.sanmateo.ca.us

Attorneys for Defendant
FRANK KASTELL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY ARDEN,<br><br>       Plaintiff,<br><br>vs.<br><br>FRANK KASTELL, et al.,<br><br>       Defendants. | Case No. C 10-0436 NC<br><br>**DECLARATION OF LARRY NEEDHAM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      November 30, 2011<br>Time:     9:00 a.m.<br>Courtroom: A, 15th Floor |

Larry Needham, declares:

1. I am employed by Smarte Carte, Inc. as Senior Director of Operations – West Region, which includes responsibility over the company's operations at San Francisco International Airport (SFO). I am generally familiar with the allegations in this lawsuit, as Smarte Carte was a defendant in this case until nearly a year ago. In particular, I am familiar with the job duties assigned to plaintiff Gary Arden in February 2009, and during the course of the case I have reviewed information contained in the Smarte Carte files regarding this incident, transcripts of Mr. Arden's deposition and videos from SFO depicting the area near Smarte Carte's vending unit #30 (on the upper/ departure curbside area of the International Terminal) for both February 2nd and 3rd, 2009. Each video generally depicted the time between 4:30 p.m. until after 6:30 p.m. Mr. Arden appeared in each video approximately two hours each day.

2. I am familiar with the job responsibilities of all Smarte Carte employees at SFO. Mr. Arden's job during those two days was that of an Assistant Terminal Manager. He was the only Assistant

Case No. C 10-0436 NC
DECLARATION OF LARRY NEEDHAM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1  Terminal Manager at SFO during the late afternoon and evening. His responsibility was to walk through the entire airport, and check on as many of the Smarte Carte Associates as possible. In February 2009 there were approximately 120 cart dispensing vending units located throughout SFO, on both the arrival and departure levels by the curb of all three terminals, as well as vending units in the various parking garages (located on various floors) as well as inside the terminals. The units are automated and designed to be used without an attendant. The Smarte Carte Associates were posted throughout the airport, and each was responsible for several units. The Associates were responsible for moving between the units, taking loose carts and putting them into the cart dispensing units, and in the event that one of the units was running low on carts, to move extra carts into that unit. There were Associates working on the upper (arrival) curbside area of the SFO International Terminal on each evening, some of whom are visible at various points on the videos.

3. The units work pretty simply: a customer inserts either a credit card or currency (in February 2009 it cost $4.00 to rent a cart), and the unit automatically releases a single cart. If payment is by credit card, the machine does not print out a receipt; if four-$1 bills are inserted, no change is returned, and if a larger bill is inserted, the machine returns change in quarters. The Associates and Assistant Terminal Manager also have a special key, or a plastic card (similar to a credit card – we refer to it as a "gold card") which enables the Smarte Carte employee to bypass the normal payment-cart release procedure described above, and to release carts. This normally occurs if there is either a surplus of carts or a shortage of carts at a unit, so that an employee can ensure that each unit has sufficient carts to dispense to potential customers. Prior to February 2009 Assistant Terminal Managers had keys to access the cashbox in each unit. That changed when, approximately a month before the events giving rise to this lawsuit, three Assistant Terminal Managers were caught using their keys and removing cash from unit #30. As a result, only the most senior staff at SFO had direct access to the units' cashboxes, although employees could still release carts in the manner described above.

4. Review of the video for those two evenings shows a very serious discrepancy between Mr. Arden's job duties, and what he actually was doing. He spent two hours (each evening) at or near unit #30, on occasion, leaning on the vending unit; he would not be expected to spend more than a minute or two by each unit. If I had been made aware of this prior to his detention by the detectives, I

1  would likely have recommended some form of discipline for that fact alone.

2      5. However, there were even more serious breaches of his employment duties visible on the February 3, 2009 video (while I generally reviewed the February 2 video, I concentrated on the February 3 video, since I understand that is the conduct for which he was detained by the detectives.) First, Smarte Carte employees are not supposed to handle customers' money; if an employee happens by while a customer is struggling to insert a bill into the vending unit, he/she might assist the customer put a bill into the unit, but under no circumstances are employees supposed to make change (because the units do that on their own), or to put customers' money into their own pockets. I observed Mr. Arden take what appeared to be money from customers, and place it into his left pocket on approximately 12 occasions (video time stamp; I list what appears to be the closest second, but on some instances, one could debate whether it should be referenced one or two seconds earlier or later):

| Time on video: | Description: |
| --- | --- |
| 16:39:44 | Lady, blue pantsuit gives money to Arden, placed in his pocket |
| 16:49:01 | Man, dark shirt gives money to Arden, placed in his pocket |
| 17:00:05 | Lady, pink dress, gives money to Arden |
| 17:27:02 | Man gives money to Arden at unit#31(behind unit #30), Arden runs up to unit # 30 and dispenses cart, brings it back to customer, and puts hand in pocket (17:27:40) |
| 17:34:38 | Lady, dark jacket gives something to Arden, puts hand in his left pocket |
| 17:44:21 | Lady, white jacket, gives something to Arden |
| 17:48:22 | 2 customers, male gives Arden money |
| 17:50:54 | Man, blue jacket, white cap gives money to Arden |
| 17:51:05 | Same customer gives more money to Arden, appears to put something into his pocket (17:51:50), and appears to transfer something from right pocket to left hand and then into left pocket (17:52:15) |
| 17:57:38 | Man, yellow jacket, gives money to Arden, who takes money from his own left pocket and gives it to man (17:57:41) and then Arden puts something in left pocket (17:58:16) |

| | | |
|---|---|---|
| 1 | 18:09:54 | Lady, white pants, puts something in Arden's right hand, he walks to unit |
| 2 | | #31 (behind unit #30) and procures a cart; Arden's hand into his left front |
| 3 | | pocket (18:10:41) |
| 4 | 18:15:21 | Arden removes a cart from unit # 30 with no customer (no money in unit) |
| 5 | 18:15:28 | Arden walks over to curb with cart and begins talking with customer with |
| 6 | | whom he has not had contact, and Arden appears to be negotiating or |
| 7 | | otherwise attempting to rent the cart to him; no transaction appears to have |
| 8 | | taken place, Arden walks away with cart (18:17:43) |
| 9 | 18:17:43 | Arden walks with the cart over to the curb and starts talking with several |
| 10 | | customers |
| 11 | 18:17:59 | Lady, dark coat, gives money to Arden |

6. There were several other odd occurrences, such as Arden moving carts from unit # 31 to unit #30, or lingering behind the front of unit # 30, as if he were inserting or removing the special key from behind the front part of the unit (which releases the locking mechanism for the carts.) At one point, his jacket was draped behind unit #30, where a key would be placed if the locking mechanism were to be released, and his hand was below his jacket for 8 seconds, and then he removes his jacket; it would only take about a second to grab one's jacket draped over the back of the vending unit, if that is all he was doing. (17:49:16 – 17:49:24.) Later on, he put his hand behind the front of unit #30 for more than 10 seconds (18:14:05 – 18:14:17); there is nothing behind the front of the unit there other than the slot to insert the special key referenced above. I find both of these actions suspicious, given all of the other activities I observed, especially for an employee who should have been in camera range no more than a minute or two.

7. I understand that unit #30 was *not* reported as being out of order, or otherwise not operating properly that day. In the event that unit #30 was not properly dispensing Smarte Cartes, the procedure is to remove the carts from the vending unit, put up a sign indicating the unit is out of order, and to use one of the adjacent vending units. One can clearly see from the video that unit #31 is located a relatively few feet away from unit #30; I haven't measured it, but I would estimate the front of unit #31 is 10-15 yards from the front of unit #30.

8. Alla Serdyuchenko was the SFO Smarte Carte Manager in February 2009. During the evening of February 2nd (or the early morning hours of February 3rd) Ms. Serdyuchenko advised my colleague, Ron Brigham, that she had been told that an individual who worked at SFO (a non-Smarte Carte employee) had expressed suspicion that Mr. Arden was pocketing customers' money earmarked for Smarte Carte (we often use the slang term "selling carts" to describe that activity.) I learned of this in an email I received early on the morning of February 3rd. Mr. Brigham asked Ms. Serdyuchenko to contact "Frank" at the police department and request that he investigate the matter.

9. In summary, Mr. Arden had no legitimate employment reason to be lingering by unit #30 for more than two hours each of the two days of video that I reviewed. He had no legitimate basis for taking money from customers on a dozen occasions over that period. His behavior was quite suspicious, as noted above, and it appears to me that he was, in fact, taking customers' money, and putting it into his pocket on numerous instances during the late afternoon/early evening of February 3, 2009. In any event, his behavior was not in keeping with Smarte Carte's policies. His conduct was generally similar on February 2nd, but I have not analyzed it in the level of detail I applied to the February 3rd video.

I declare under penalty of perjury that the foregoing is true and correct and executed on October 17, 2011 in St. Paul, Minnesota.

_Larry Needham_

Case No. C 10-0436 NC      5
DECLARATION OF LARRY NEEDHAM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT