CHARLES CARREON (127139)
CHARLES CARREON, ESQ.
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel: 520-841-0835
Attorney for Plaintiff Gary Arden

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

GARY ARDEN,

        Plaintiff,

   vs.

FRANK KASTELL, LINARD DAVIS,
AIRPORT TRAVEL AGENCY, INC., ALLA
SERDYUCHENKO, RON BRIGHAM,
SMARTE CARTE, INC., and Does 1 - 10

       Defendants.

Case No.:  3:10-cv-00436 JL

DECLARATION OF GARY ARDEN
SUBMITTED IN OPPOSITION TO
MOTINON FOR SUMMARY JUDGMENT
OF FRANK KASTELL

Date:  November 30, 2011
Time:  9:00 a.m.
Courtroom:  A, 15th Floor

---

## DECLARATION OF GARY ARDEN

Gary Arden declares:

**1.**  I am the plaintiff in this action and make this declaration in opposition to the motion for summary judgment of defendant Frank Kastell from personal knowledge, and if called as a witness, I could and would so competently testify.

**2.**  Smarte Carte, Inc. ("Smarte Carte") operates a nationwide luggage cart rental business through a system of cart management units ("CMUs") that dispense one luggage cart per $4 cash or credit-card payment.  Smarte Carte operates at San Francisco International Airport ("SFO").  CMU 30, located outside an entrance to the International Terminal, is the busiest CMU at SFO.  A surveillance camera is focused directly on CMU 30.

**3.**  In June 2008, i was hired as an Assistant General Manager for Smarte Carte at SFO.  My direct report was General Manager Alla Serdyuchenko.  Before getting the Smarte Carte job, I

was in training to be a Santa Clara County Corrections officer, but I had to withdraw due to a physical injury.  Before that, I worked for Covenant Aviation as a manager for the Transportation Safety Administration ("TSA").

**4.**  I understood my job with Smarte Carte, and did it well.  No one from Smarte Carte had ever criticized my job performance before February 5, 2009, or told me not to remain at CMU 30.  I had been considered for promotion to my own position as a General Manager.  I was in the bonus pool for 2008, and received a performance-based bonus.  I relied on the Assistant Terminal Manager job description that Smarte Carte had posted on the Internet in 2008 and 2009 to know the scope of his duties, attached as Exhibit 16 to the declaration of my counsel.  The job description described four job duties:

- Assist terminal manager in all aspects of operation.
- Assist in scheduling of staff.
- Ensure all cash handling and paperwork is done properly.
- Ensure excellent customer service.

**5.**  As the job description suggests, my people-management duties were essentially limited to scheduling staff.  There was no fixed location from which I could have "supervised," Smarte Carte non-managerial employees because they were always on the move, roaming the departure and arrival areas, parking lots, and other passenger-accessible areas, collecting carts and loading them back into CMUs.  There was no one location where I could go to keep an eye on them.

**6.**  CMUs operate in the following fashion.  Smarte Carte employees load the CMUs with carts by sliding the right front wheel into a long track that accommodates a large number of carts.  At the front end of the track, a bolt locks the carts in.  When a person deposits $4, a computer records the purchase and saves it to the central computer, and the bolt retracts, allowing one cart to be extracted.  I was entrusted with a circular key that allowed him to unlock the bolt on the CMU, so that I could extract carts from one CMU and redistribute them to another that would sometimes run low due to the fluctuations in business.  When the bolt was unlocked, the CMU would not record the extraction of carts as "sales."

**7.**  I "ensured excellent customer service" by assisting customers at the busiest location with the greatest customer service needs, which was at the International Terminal near CMU 30.  There

were physical issues, language issues, and cash-handling issues to help customers with. Extracting a cart from the typical CMU requires a good, solid tug, and CMU 30 was typical in this regard.   Elderly customers, who were quite numerous at the International Terminal where CMU 30 is located, needed physical assistance to extract a cart from the CMU.   Smarte Carte CMUs have a small LED display on the front that displays the instructions for customer use in English only.   Elderly users had a hard time discerning the words on the display, and many foreign visitors couldn't read the English language.   Payment issues arose because Smarte Carte CMUs take one and five dollar bills, and major credit cards only, but the carts cost $4, so cash customers often need change.  Because CMU 30 was the busiest location at the International Terminal, where a large number of customers required assistance, I often posted myself at that location.

**8.**   In order to help people who needed change to rent a cart, I made a point of bringing dollars to work.   My supervisor Gary Ng knew of and approved of the fact that I was helpful to customers and came to work prepared to make change for them.  Indeed, on several nights, Gary Ng worked with me, helping to do all of these things.  When requested by a customer to bring a cart so that luggage could be directly loaded onto it from an arriving vehicle, I would advance funds for a cart and then obtain reimbursement from the customer.  This was an acceptable cash-handling procedure.

**9.**     During the latter part of December 2008, Kastell three Smarte Carte employees were discovered to be subverting the operation of CMUs by keeping the front panels of the machines open and using an internal mechanism to dispense carts without inserting payment.   Kastell obtained surveillance video of the three men and reviewed them with Serdyucheko.

**10.** On February 3, 2009, at 6:38 p.m., I was working at the International Terminal when Kastell and SMSO Deputy Sheriff John Corkery approached me, displayed their badges, and directed me to come with them for questioning.  Det. Kastell said I would be free to go after he answered questions.  I did not believe I was free to go, in part because of the pervasive atmosphere of security at SFO, especially when I was essentially locked into the SFO police station with two armed policemen.  Kastell accused me of stealing $4 cart-rental fees from Smarte Carte, which I

adamantly denied.  Kastell told me to empty my pockets.  Again, I did not feel I had any choice, and did not give my consent, but simply complied with Kastell's command.  Kastell confiscated $109 in cash and my SFO Security Badge, and told me I would be referring the case to the San Mateo County District Attorney ("SMDA") for prosecution.  Two days later I was fired by Serdyuchenko from Smarte Carte because I didn't have a badge.

**11.** I was forced to defend myself in *People v. Gary Arden,* San Mateo County Superior Court Case No. NM383977A (the "Criminal Case"), from April 14, 2009 until November 20, 2009, when it was dismissed at the request of Deputy District Attorney Sharron Lee with prejudice.  I was forced to spend well over $40,000 in attorneys fees and costs.  Although I eventually got a job at Covenant Aviation and am again a TSA worker, I have been passed over for promotion repeatedly.  Due to the financial hardship of being without a job for several months, while simultaneously being required to pay for my defense, I was unable to pay credit card bills, and have suffered thousands of dollars in default judgments.  As I still work at SFO, and the anxiety of having to be in an environment where Kastell is an important man is a constant strain.

**12.** I have viewed the February 2nd and February 3rd Videos obtained in discovery in the Criminal Case many times.  The February 3rd Video starts at 4:30 p.m., and continues until shortly after 6:38 p.m., when Kastell and Corkery detained me.  During the time shown on the video, I have seen myself repeatedly placing money in the unit immediately after receiving it from customers.  Every time I am shown on that video giving a customer a cart, I had received the money beforehand from the customer and used it to purchase the cart.  Once, I used my own money to get a cart for a customer, who then refused to accept it, so I gave it to yet another customer and reimbursed myself the $4 I had advanced for the benefit of the would-be customer.  This exchange appears on the February 3rd Video, that has a digital timekeeping device that displays a 24-hour clock, between 18:15:00 hours and 8:17:40 hours.

**13.** Throughout its entire length, the February 3rd Video shows me providing excellent customer service, including numerous occasions when I took money from customers, put it in the machine for them, pulled out a cart, and gave it to them.  I never retained any cart-rental fees for myself.  I never performed "rapid hand gestures" to simulate depositing money while actually pocketing

the funds.  I have no sleight-of-hand abilities that would enable me to conceal money from a person standing beside, in front of, or behind me.  Larry Needham's declaration that purports to interpret what appears on the video does not accurately record the video evidence.  His statements about my actions are completely inaccurate and appear to derive from bias.  Neither Larry Needham or anyone at Smarte Carte ever advised me that I could not put my hands in my pocket, could not assist customers, or could not make change for customers.

I hereby declare, pursuant to the provisions of 28 U.S.C. § 1746 (2), under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct, and that this declaration was executed on this 31ST day of October, 2011 at San Francisco, California.

Gary Arden
2011.10.31
21:40:17 -07'00'

_____
Gary Arden